**ON REHEARING EN BANC**

**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

─────────────

**No. 16-4441**

─────────────

UNITED STATES OF AMERICA,

            Plaintiff - Appellee,

      v.

JESMENE LOCKHART, a/k/a Jesmene Laquin-Montre Lockhart, a/k/a Jasmene Lockhart,

            Defendant - Appellant.

─────────────

Appeal from the United States District Court for the Western District of North Carolina, at Charlotte.  Robert J. Conrad, Jr, District Judge.  (3:15-cr-00034-RJC-1)

─────────────

Argued:  September 19, 2019                    Decided:  January 10, 2020

─────────────

Before GREGORY, Chief Judge, and WILKINSON, NIEMEYER, MOTZ, KING, AGEE, KEENAN, WYNN, DIAZ, FLOYD, THACKER, HARRIS, RICHARDSON, QUATTLEBAUM, and RUSHING, Circuit Judges.

─────────────

Vacated and remanded by published opinion.  Judge Keenan wrote the majority opinion, in which Chief Judge Gregory, Judge Wilkinson, Judge Motz, Judge King, Judge Wynn, Judge Diaz, Judge Floyd, Judge Thacker, Judge Harris, and Judge Richardson joined.  Judge Wilkinson wrote a concurring opinion.  Judge Wynn wrote a concurring opinion.  Judge Rushing wrote a dissenting opinion, in which Judge Niemeyer, Judge Agee, and Judge Quattlebaum joined.

─────────────

**ARGUED:** Joshua B. Carpenter, FEDERAL PUBLIC DEFENDERS OF WESTERN NORTH CAROLINA, Asheville, North Carolina, for Appellant. Amy Elizabeth Ray, OFFICE OF THE UNITED STATES ATTORNEY, Asheville, North Carolina, for Appellee. **ON BRIEF:** Anthony Martinez, Federal Public Defender, FEDERAL PUBLIC DEFENDERS OF WESTERN NORTH CAROLINA, Charlotte, North Carolina, for Appellant. R. Andrew Murray, United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Charlotte, North Carolina, for Appellee.

BARBARA MILANO KEENAN, Circuit Judge:

Jesmene Lockhart appeals his conviction for possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g)(1), and his mandatory minimum 15-year sentence of imprisonment imposed under the Armed Career Criminal Act, 18 U.S.C. § 924(e) (ACCA). Lockhart contends that the magistrate judge plainly erred by failing to advise him during the Rule 11 plea colloquy of his potential exposure to the 15-year mandatory minimum sentence. Lockhart asserts that if he had been properly informed of his sentencing exposure, there is a "reasonable probability" that he would not have pleaded guilty. He also argues that the Supreme Court's intervening decision in *Rehaif v. United States*, 139 S. Ct. 2191 (2019), renders his guilty plea involuntary, because he did not understand the essential elements of the offense to which he pleaded guilty.

Upon consideration of the parties' arguments, we hold that Lockhart has established prejudice for purposes of plain error review. We therefore vacate his conviction and remand the case to the district court for further proceedings.

I.

In September 2014, officers with the Charlotte-Mecklenburg Police Department in North Carolina responded to a report of suspicious activity involving individuals in a parked car. When they arrived at the scene, an officer saw Lockhart sitting in the driver's seat of the vehicle. The officer observed Lockhart use his right hand to provide his identification, "while reaching down by his left leg with his left hand, where the officer saw the butt of [a] gun with a magazine clip." The officers recovered the loaded handgun

3

and an additional magazine from the driver's side of the car, and the authorities later determined that the firearm was stolen.

Lockhart pleaded guilty without a written plea agreement to a single count of possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g)(1). During the Rule 11 plea colloquy, the magistrate judge asked the government to "summarize the charge and the penalty." The government responded that the "maximum penalty" Lockhart faced was 10 years' (120 months') imprisonment. At no time during the plea colloquy did the court or the government clarify that Lockhart's criminal history could result in a 15-year (180-month) mandatory minimum sentence under the ACCA.

The probation officer prepared a presentence report (PSR), and recommended sentencing Lockhart as an armed career criminal under the ACCA based on three prior convictions for North Carolina robbery with a dangerous weapon. All his convictions were based on offenses committed in a one-week time period when Lockhart was 16 years old. In the PSR, the probation officer explicitly highlighted the error in the plea colloquy, noting that Lockhart "was informed that his statutory penalties . . . were not more than ten years['] imprisonment," but that "based on [Lockhart's] three prior convictions for violent felonies, [his] statutory penalties . . . are not less than fifteen years['] imprisonment."

Lockhart's counsel objected to the proposed ACCA designation on the grounds that (1) Lockhart's North Carolina convictions, which were consolidated for judgment, should count as a single ACCA predicate, and (2) an ACCA sentence would violate the Eighth Amendment because Lockhart was a juvenile when he committed the offenses. Lockhart

4

did not assert that he previously had been unaware of his potential ACCA designation, nor did he seek to withdraw his guilty plea.

After overruling the objections of Lockhart's counsel, the district court concluded that Lockhart qualified as an armed career criminal under the ACCA and imposed the mandatory minimum term of 180 months' imprisonment. Following the court's imposition of sentence, Lockhart's counsel conferred with the government's counsel and informed the court:

> I'm going back to his plea colloquy. He didn't plead to 924(e) [ACCA] it was not on the Bill of Indictment. But I went over it beforehand. So I just want to put it on the record that he was fully aware of that. I just thought about it.

The government's counsel added, "We just wanted to make a record of that." The district court did not ask counsel to elaborate on the issue, and did not confirm with Lockhart whether he was aware of his potential ACCA exposure before pleading guilty.

Lockhart appealed, represented by new appellate counsel. A panel of this Court affirmed Lockhart's conviction. *See United States v. Lockhart*, 917 F.3d 259 (4th Cir. 2019), *vacated by* 771 F. App'x 204 (4th Cir. 2019). Upon Lockhart's request for rehearing, we vacated the panel's opinion and now consider the case en banc.

## II.

Because Lockhart did not attempt to withdraw his guilty plea in the district court, we review his plea challenge for plain error. *United States v. McCoy*, 895 F.3d 358, 364 (4th Cir. 2018). To succeed under plain error review, a defendant must show that: (1) an error occurred; (2) the error was plain; and (3) the error affected his substantial rights.

5

*United States v. Olano*, 507 U.S. 725, 732 (1993). We retain the discretion to correct such an error but will do so "only if the error seriously affects the fairness, integrity or public reputation of judicial proceedings." *United States v. Massenburg*, 564 F.3d 337, 343 (4th Cir. 2009) (quoting *Olano*, 507 U.S. at 732) (internal quotation marks omitted).

Lockhart argues that if he had known he was facing a 180-month minimum sentence under the ACCA, rather than the 120-month maximum stated at the plea hearing, he likely would not have pleaded guilty. Lockhart asserts that the benefit he gained from pleading guilty was "so small as to be virtually non-existent" and, thus, that he would have had a strong incentive to proceed to a trial in an attempt to avoid the 180-month ACCA sentence. Lockhart separately argues that the Supreme Court's decision in *Rehaif*, 139 S. Ct. 2191, issued after the panel opinion in this case, constitutes an intervening change in the law that requires vacatur of his guilty plea.

In response, the government concedes that the magistrate judge committed plain error in failing to advise Lockhart of his correct sentencing exposure. However, the government contends that this error did not affect Lockhart's substantial rights, because he has failed to show a "reasonable probability" that he would not have pleaded guilty if the court had advised him of his correct sentencing range. *See United States v. Dominguez Benitez*, 542 U.S. 74, 76 (2004). The government also asserts that the Supreme Court's decision in *Rehaif* does not require that Lockhart's conviction be vacated.

In addressing these arguments, we first consider the magistrate judge's failure to advise Lockhart of the increased sentence he faced due to his potential ACCA eligibility. Both parties aver, and we agree, that the first two prongs of plain error review on this issue

6

are satisfied.  Under Federal Rule of Criminal Procedure 11, a district court must advise a defendant of "any maximum possible penalty," as well as "any mandatory minimum penalty," before accepting a guilty plea.  Fed. R. Crim. P. 11(b)(1)(H), (I).

And even if a district court is not certain whether a defendant will qualify for an enhanced sentence under the ACCA, the court nevertheless must "anticipate the possibility and explain to [the defendant] the sentence that would be applicable if he had prior qualifying convictions."  *United States v. Hairston*, 522 F.3d 336, 340 (4th Cir. 2008); *see also Massenburg*, 564 F.3d at 343 (error was plain when defendant was not advised of potential ACCA sentence before pleading guilty).  As the Supreme Court has explained:

> If the judge told the defendant that the maximum possible sentence was 10 years and then imposed a sentence of 15 years based on ACCA, the defendant would have been sorely misled and would have a ground for moving to withdraw the plea.

*United States v. Rodriquez*, 553 U.S. 377, 384 (2008).  Such erroneous sentencing information given during a Rule 11 colloquy cannot be cured by contrary information later contained in a PSR.  *United States v. Goins*, 51 F.3d 400, 404 (4th Cir. 1995).

To establish that a Rule 11 error affected his substantial rights under the third prong of plain error review, a defendant bears the burden to show "a reasonable probability that, but for the error, he would not have entered the plea."  *Dominguez Benitez*, 542 U.S. at 83. Although the reasonable probability standard is a demanding one, a defendant need not "prove by a preponderance of the evidence that but for error things would have been different."  *Id.* at 83 n.9.  Instead, a defendant must "satisfy the judgment of the reviewing

court, informed by the entire record, that the probability of a different result is 'sufficient to undermine confidence in the outcome' of the proceeding." *Id.* at 83 (citations omitted).

In *Massenburg*, 564 F.3d 337, we applied this "whole record" prejudice inquiry to the same error presented here, namely, the district court's failure to advise a defendant of his potential exposure to an enhanced sentence under the ACCA. And, as here, the defendant's PSR included a statement that his criminal history qualified him to receive a sentence of 180 months to life imprisonment. *Id.* at 340. Had he pleaded guilty without the ACCA designation, Massenburg faced a statutory maximum of 120 months' imprisonment, and a guidelines range of between 77 and 96 months.[1] Applying the heightened statutory and guidelines ranges imposed by the ACCA, the district court sentenced Massenburg to a term of 210 months' imprisonment. *Id.* at 339.

Despite this significant increase in his sentence, we held under plain error review that Massenburg had not shown that the Rule 11 error affected his substantial rights. 564 F.3d at 346. After considering the entire record, we emphasized several facts indicating that the error had not affected Massenburg's decision to plead guilty: (1) Massenburg had not made any "statements on the record . . . suggesting that [he] would not have pleaded guilty if the district court had properly informed him of the sentencing exposure that he faced"; (2) Massenburg had not moved to withdraw his guilty plea after learning from the PSR that he could be sentenced under the ACCA; and (3) the parties did not dispute that the evidence of Massenburg's guilt was "strong." *Id.* at 343-44.

---

[1] This guidelines range accounts for a three-level reduction for acceptance of responsibility. *See* USSG Ch. 5 pt. A.

8

Critical to our analysis was the fact that Massenburg "presented *no* evidence suggesting that the [error] affected his decision to plead." *Id.* at 346 (emphasis added). Given this "absence of any evidence in the record" supporting Massenburg's claim of prejudice, we concluded that he had not satisfied his burden to show that there was a "reasonable probability" that he would not have pleaded guilty had he been advised properly of his sentencing exposure. *Id.* at 339, 343-46; *see Dominguez Benitez*, 542 U.S. at 76.

With this precedent in mind, we turn to consider the facts in the record before us to determine whether Lockhart has shown a reasonable probability that he would not have entered his guilty plea in the absence of the erroneous information he received during the Rule 11 colloquy. Like Massenburg, Lockhart did not object to the Rule 11 error in the district court. Nor did he seek to withdraw his guilty plea after learning of his ACCA exposure. And, like most defendants who plead guilty, the government's evidence against Lockhart indisputably was strong.

Nevertheless, the magistrate judge's failure to inform Lockhart of the correct sentencing range was an obvious and significant mistake. Such an error undermines the very purpose of Rule 11 that a defendant be fully informed of the nature of the charges against him and of the consequences of his guilty plea. *See Massenburg*, 564 F.3d at 346; *Hairston*, 522 F.3d at 340-41. As a result of this error, Lockhart had every reason to think after the plea hearing that he would receive a sentence within the stated statutory range of between zero and 120 months' imprisonment, with an advisory guidelines range of between 46 and 57 months. 18 U.S.C. § 924(a)(2). This guidelines range included the primary

9

benefit of pleading guilty, namely, a three-level reduction in the base offense level, which would have lowered Lockhart's guidelines range from the otherwise-applicable range of between 63 and 78 months' imprisonment.

Additionally, it was reasonable for Lockhart to think that he might receive a sentence on the low end of his 46 to 57-month guidelines range, because his prior criminal history was limited to offenses committed within a short time frame while he was a juvenile. *See* 18 U.S.C. § 3553(a). Indeed, Lockhart objected to the classification of his prior convictions as ACCA predicates based in part on his youth at the time they were committed.

Lockhart's "designation as an armed career criminal, however, completely changed the sentencing calculus" in several notable ways. *Hairston*, 522 F.3d at 341. First, as discussed above, the ACCA substantially increased Lockhart's sentencing exposure, a crucial consideration for a defendant considering whether to plead guilty. Instead of facing a statutory range of between zero and 120 months' imprisonment, Lockhart faced a minimum sentence of 180 months and a maximum sentence of life imprisonment. 18 U.S.C. § 924(a)(2), (e). His ACCA designation also significantly increased his guidelines range to between 188 and 235 months in prison, before credit for acceptance of responsibility. This increase represented a 125-month difference at the bottom of the range. Such a substantial increase in sentencing exposure obviously would have impacted Lockhart's "assessment of his strategic position." *Dominguez Benitez*, 542 U.S. at 85.

Second, unlike the sentencing considerations present in *Massenburg*, the 180-month statutory minimum fixed by the ACCA severely restricted any benefit Lockhart could have

10

received by pleading guilty. As explained above, Lockhart expected to receive an adjustment for acceptance of responsibility due to his guilty plea, reducing the low end of his guidelines range by 17 months, from 63 to 46 months, a 27% reduction. However, due to the ACCA's 180-month mandatory minimum, the acceptance of responsibility adjustment only reduced the bottom of his guidelines range by *eight months*, from 188 to 180 months, a 4.2% reduction.[2] Notably, this reduction in benefit was far greater than the detrimental impact resulting from the ACCA enhancement in *Massenburg*. There, because of Massenburg's more extensive criminal history, he received about a 23% reduction of the bottom of his guidelines range due to his acceptance of responsibility, both with and without the ACCA enhancement.

There is no evidence in the present record that Lockhart obtained any benefit as a result of his decision to plead guilty other than the acceptance of responsibility adjustment to his guidelines calculation. Lockhart was charged with a single count under Section 922(g), and, thus, the government did not dismiss any additional charges in return for Lockhart's agreement to plead guilty. Accordingly, once designated an armed career criminal, the benefit Lockhart received from pleading guilty was an *eight-month reduction* of the bottom of his guidelines range. To reiterate, instead of 46 months at the low end of his guidelines range, Lockhart faced a non-negotiable 180-month minimum with the ACCA designation. This statutorily imposed minimum also precluded Lockhart from

---

[2] We focus on the bottom end of Lockhart's guidelines range because, as discussed above, Lockhart had every reason to think he would receive a sentence at the low end of the range.

11

requesting a downward variance based on his youth at the time he committed his predicate offenses, or on any other mitigating factors that he otherwise could have asserted in accordance with 18 U.S.C. § 3553(a).

Rather than accepting a plea with little benefit, Lockhart could have exercised his right to require the government to prove at trial all the elements of the offense beyond a reasonable doubt. And importantly, unlike counsel for Massenburg, Lockhart's appellate counsel has represented to this Court that if we vacate Lockhart's guilty plea, Lockhart will proceed to trial in the district court. *Cf. Massenburg*, 564 F.3d at 343 ("Even on appeal, Massenburg has not alleged that he would have gone to trial in the absence of the district court's error."). Thus, considering the totality of the circumstances relevant to Lockhart's potential sentence, we conclude that the required warning about his ACCA exposure would have had a significant effect on his "assessment of his strategic position."[3] *Dominguez Benitez*, 542 U.S. at 85.

---

[3] Consistent with this conclusion, nationwide data show that federal defendants who are designated armed career criminals decline to plead guilty with noticeable frequency. U.S. Sentencing Commission, *Mandatory Minimum Penalties for Federal Firearms Offenses in the Federal Criminal Justice System* 37 (March 2018), *available at* https://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/2018/20180315_Firearms-Mand-Min.pdf. Overall, across all types of cases, defendants proceed to trial less than 3% of the time. *Id.* Yet, defendants subject to the 180-month mandatory minimum imposed by the ACCA exercise their right to a trial in 13.5% of cases, more than four times the rate of offenders generally. *Id.* This trial rate is higher than that of defendants subject to mandatory minimum sentences generally, and higher even than defendants subject to the severe mandatory minimum penalties applicable to convictions under 18 U.S.C. § 924(c). *Id.* These statistics illustrate the commonsense conclusion that defendants like Lockhart who have little to gain by pleading guilty are more likely to take their chances at trial.

12

We find no merit in the government's contention that the impact of this Rule 11 error is rendered doubtful by defense counsel's eleventh-hour statement to the district court that Lockhart knew about his ACCA designation. Defense counsel made this claim at the end of the sentencing hearing after conferring with the government's counsel. We have no way of evaluating the credibility of defense counsel's statement. Nor can we assess the substance of any alleged conversation or whether Lockhart understood his ACCA exposure as a result. The district court did not ask counsel any clarifying questions, acknowledge the Rule 11 error, or seek to confirm counsel's allegation with Lockhart himself. We thus conclude that counsel's statement is minimally probative on the question of prejudice.

We similarly give little weight to the government's description of Lockhart's potential sentencing exposure at the arraignment hearing in this case. Lockhart's counsel waived a formal reading of the indictment. While advocating for Lockhart's pretrial detention, the government's counsel stated that the ACCA enhancement "might indeed" apply to Lockhart, while acknowledging that Lockhart's criminal history had not yet been computed. The government also noted that Lockhart's criminal history consisted of a single consolidated judgment, which might or might not qualify as multiple ACCA predicates. Given the government's assertion at the plea hearing three months later that Lockhart faced a 10-year maximum, we think the government's ambiguous reference at the arraignment hearing plainly was insufficient to provide Lockhart substantive notice of his ACCA exposure.

Based on this record, we decline to assume that Lockhart knew of his ACCA exposure before he pleaded guilty, especially given that he was not trained in the law, the

13

indictment did not reference Section 924(e), he was deprived of his right to be advised correctly by the court during the Rule 11 hearing, and counsel did not object to the obvious error made during the plea colloquy.

Lockhart's contention of prejudice is strengthened further by the Supreme Court's decision in *Rehaif*, 139 S. Ct. 2191, an intervening change in the law relevant to the validity of Lockhart's guilty plea under Section 922(g).[4]  In *Rehaif*, the Supreme Court held that, to obtain a conviction under Section 922(g), the government "must prove both that the defendant knew he possessed a firearm and that he knew he belonged to the relevant category of persons barred from possessing a firearm." *Id.* at 2200.  The Court's holding in *Rehaif* abrogated the prior precedent of this Circuit, which did not require proof of a defendant's knowledge that he belonged to the relevant category.  *See United States v. Langley*, 62 F.3d 602, 604-06 (4th Cir. 1995), *abrogated by Rehaif*, 139 S. Ct. 2191.

At the time Lockhart entered his plea, no one in the courtroom, including Lockhart, his counsel, the government, or the magistrate judge, understood the essential elements of the Section 922(g) offense.  *See Bousley v. United States*, 523 U.S. 614, 618-19 (1998); *see also* Fed. R. Crim. P. 11(b)(1)(G) (court must advise defendant of "the nature of each charge to which [he] is pleading" guilty).  The requirement that a defendant understand the

---

[4] We disagree with the government's assertion that Lockhart waived his *Rehaif* argument by failing to raise it in his opening brief, which was filed before *Rehaif* was decided.  As we have explained, "an appellant can only 'abandon' an argument that was actually available to him," and thus may raise a new argument based on an intervening change in the law during the pendency of an appeal. *United States v. White*, 836 F.3d 437, 443 (4th Cir. 2016), *abrogated on other grounds by United States v. Stitt*, 139 S. Ct. 399 (2018).

14

essential elements of the offense to which he pleads guilty is rooted in fundamental principles of due process. *See Bousley*, 523 U.S. at 618-19; *Henderson v. Morgan*, 426 U.S. 637, 644-45 (1976). Given the wholesale misunderstanding of the law at the time of his plea, Lockhart argues that his guilty plea was involuntary and must be vacated. *See Bousley*, 523 U.S. at 618-19; *Henderson*, 426 U.S. at 644-45.

The government concedes, and we agree, that the magistrate judge plainly erred in accepting Lockhart's guilty plea based on this pre-*Rehaif* understanding of the law. *See Henderson v. United States*, 568 U.S. 266, 268-69 (2013) (question whether an error is "plain" is determined based on the law at the time of appeal, not at the time the district court acted). The government argues, however, that we should require Lockhart to show he was prejudiced by the *Rehaif* error pursuant to our traditional plain error review, because the claim was not preserved in the district court. *See Olano*, 507 U.S. 725.

We need not, and do not, decide today whether a standalone *Rehaif* error requires automatic vacatur of a defendant's plea, or whether such error should be reviewed for prejudice under *Olano*, because Lockhart has satisfied the more demanding *Olano* standard based on the two errors before us. Therefore, given the procedural and factual circumstances of this case, we hold that the magistrate judge's failure to properly advise Lockhart of his ACCA exposure, together with the *Rehaif* error, in the aggregate are "sufficient to undermine confidence in the outcome of the proceeding." *Dominguez Benitez*, 542 U.S. at 83 (citation and internal quotation marks omitted).

Before a defendant enters a plea of guilty, he is entitled to understand the nature of the offense to which he is admitting guilt and the consequences of his plea. *See Bousley*,

15

523 U.S. at 618-19; *Hairston*, 522 F.3d at 340; Fed. R. Crim. P. 11(b)(1)(G)-(I). The errors that occurred in this case prevented Lockhart from engaging in the calculus necessary to enter a plea on which this Court can rely in confidence. We therefore hold that those errors "seriously affect[] the fairness, integrity or public reputation of judicial proceedings." *Olano*, 507 U.S. at 732 (citation and internal quotation marks omitted). Accordingly, we exercise our discretion on plain error review and provide Lockhart with the remedy of vacating his guilty plea and conviction. *Id.*

### III.

For these reasons, we vacate Lockhart's plea and conviction, and remand the case to the district court for further proceedings.

*VACATED AND REMANDED*

16

WILKINSON, Circuit Judge, concurring:

I am pleased to concur in Judge Keenan's fine opinion in this case. The unusual circumstances here persuade me that the proper remedy is to vacate Lockhart's guilty plea. Under the facts presented, I believe the majority has rightly found "a reasonable probability that, but for the error, [Lockhart] would not have entered the plea." *United States v. Dominguez Benitez*, 542 U.S. 74, 76 (2004).

## I.

There are many reasons why guilty pleas are ordinarily deemed final in our criminal justice system. *See United States v. Davila*, 569 U.S. 597, 608 (2013) (underscoring "the particular importance of the finality of guilty pleas") (quoting *Dominguez Benitez*, 542 U.S. at 82). For one, a guilty plea is uniquely susceptible to buyer's remorse. A veritable barrage of what-ifs will naturally befall a defendant biding his time in the penitentiary—not least of which is the possibility, however unrealistic, that the jury may have found him innocent. Without a meaningful concept of finality, courts would find themselves confronting the reopening of countless cases.

A second reason for finality is that guilty pleas inure to the benefit of defendants and prosecutors alike. From the defendant's point of view, pleas offer an option of measured leniency—valuable leverage in negotiations for a lighter sentence or a dismissal of charges. Defendants can dangle before beleaguered prosecutors the tempting prospect of dispensing with the delays and burdens of a trial. And the finality of a plea ironically can protect defendants from themselves, and the harsher consequences that may await the rescission of a beneficial bargain. As for the government, the system of guilty pleas is

17

"indispensable in the operation of the modern criminal justice system," *Dominguez Benitez*, 542 U.S. at 83. Pleas afford the government the ability to seek prompt resolution of cases through a regularized process that has its share of critics, to be sure, but one that bears the earmarks of justice, among them the presence of defense counsel and the necessity of voluntary and knowledgeable consent.

In short, courts should honor the terms of these deals much as they do a contract. *See Garza v. Idaho*, 139 S. Ct. 738, 744 (2019) (observing that "plea bargains are essentially contracts") (internal citation omitted). As with any contract, plea negotiations come freighted with external pressures, among them the relative strength of the government's case. And guilty pleas, like any other binding agreement, rest on a tradeoff between present certainty and future risk. Parties are willing to gain the surety of today in exchange for foregoing the promise and hazards of tomorrow. The stability of law rests in no small part on the sanctity of contract, and these bargains warrant respect.

In keeping with these observations, I do not lightly join the majority in vacating Lockhart's plea. But the errors in this case, as I see it, warped two inputs central to a defendant's decision to waive or to exercise his right to trial: his sentencing exposure and the strength of the government's case against him. Taking the first, the majority rightly acknowledges that a defendant's sentencing exposure is "a crucial consideration for a defendant considering whether to plead guilty." Maj. Op. at 10. And the magistrate judge in this case committed plain error under Federal Rule of Criminal Procedure Rule 11 by misadvising Lockhart about this consideration. Lockhart, to wit, was led to believe that he faced a 10-year maximum sentence when he in fact faced a 15-year mandatory minimum

18

with a maximum of life in prison under ACCA. Indeed, once we account for the correct exposures, it is clear that Lockhart gained rather little by pleading guilty. As the majority notes, "once designated an armed career criminal, the benefit Lockhart received from pleading guilty was an *eight-month reduction* of the bottom of his guidelines range." Maj. Op. at 11.

While the PSR with which Lockhart confirmed his familiarity at sentencing corrected this error, the district court never spelled out to Lockhart the magistrate judge's mistake. *See* J.A. 35-53. In view of the overall strength of the government's case, however, which included the fact that the police saw him trying to dispose of the Glock nine-millimeter pistol under the car seat as they approached, it is difficult to believe that this error by itself affected Lockhart's decision not to go to trial. In other words, it should not by itself entitle Lockhart to relief. For the "burden should not be too easy" for defendants on plain-error review, *Dominguez Benitez*, 542 U.S. at 82, else they could sandbag trial courts by pointing out errors long after the opportunity to take curative action has passed. A reviewing court, then, "must look to the entire record, not to the plea proceedings alone," in assessing whether it is reasonably probable that a defendant would have gone to trial absent the error. *Id.* at 80.

The majority's probing review of the record is faithful to that instruction: It identifies a "possible defense[] that appear[s] from the record," which bears on the "overall strength of the Government's case"—namely, Lockhart's *Rehaif* defense to his § 922(g) felon-in-possession charge. *Id.* at 85. In *Rehaif v. United States*, 139 S. Ct. 2191 (2019), the Supreme Court held that a felon-in-possession charge under § 922(g) requires the

19

government to prove not only that a defendant knew he possessed a firearm, but also that he knew his status as a felon when he possessed it, *id.* at 2194. On this front, Lockhart argues that he had little reason to know, as the statute requires, that he was a felon. Indeed, his prior convictions arose from a single state-court judgment when he was 16 years old and this fact, he argues, would make proving the *mens rea* for this element a non-trivial lift for the government.

I am skeptical of this assertion for several reasons. First, Lockhart's allocution statement seems to admit that he knew he was a felon when he committed the charged crime. J.A. 47. Second, Lockhart who claims no knowledge of his felon status spent well over a year in prison for his prior state convictions. Again, if Lockhart's *Rehaif* defense was all there was, that alone in my view would not have indicated a reasonable probability that Lockhart would have gone to trial absent the error. As with the Rule 11 error, the presence of this *Rehaif* defense would not by itself entitle Lockhart to relief.

I agree with the majority opinion, however, that "in the aggregate" these errors "'are sufficient to undermine confidence in the outcome of the proceeding.'" Maj. Op. at 15 (quoting *Domingez Benitez*, 542 U.S. at 83). Whereas neither error considered in isolation would, as I see it, entitle Lockhart to relief under the reasonable probability standard, the two factors in combination are more troubling than either standing alone. And that is not all. As precedent requires, *see Dominguez Benitez*, 542 U.S. at 83, the record contains affirmative evidence that this proceeding, taken as a whole, affected the defendant's calculus.

20

On that score, Lockhart's counsel exhibited "starkly odd behavior" in conferring with the Assistant United States Attorney and volunteering to the district court that Lockhart knew about his potential ACCA enhancement—after the sentencing hearing had already concluded. *Lockhart*, 917 F.3d at 268 (Floyd, J., concurring in the judgment). While Lockhart's counsel may have been acting in an effort to protect what he saw as a beneficial plea agreement, the fact that Lockhart never had the opportunity during the pendency of sentencing proceedings to personally confirm or deny his knowledge of the ACCA enhancement is, when combined with the earlier confusion, problematic. *See* J.A. 35-53. A few days later, Lockhart filed a *pro se* notice of appeal requesting a new lawyer. Because Lockhart's case never went to trial, this request may well have related to miscommunications surrounding Lockhart's guilty plea. And, if construed in Lockhart's favor, it suggests that Lockhart's counsel, as well as the magistrate judge, gave him bad advice.

In short, too much went wrong here. Plea and sentencing proceedings need not be styled to perfection, but they must be fair. *See* Fed. R. Crim. P. 11(h) (subjecting Rule 11 mistakes to harmless error review). And just as different facts may counsel hesitation before we disturb the finality of guilty pleas, so also may a different result be required for ostensibly similar cases arising in a different procedural posture. The greatest degree of caution is required before we permit withdrawal of guilty pleas on collateral review. The Supreme Court has long recognized the diminished finality interests accorded to a criminal conviction on direct review. *See, e.g.*, *Brecht v. Abrahamson*, 507 U.S. 619, 635 (1993) ("The reason most frequently advanced in our cases for distinguishing between direct and

collateral review is the State's interest in the finality of convictions that have survived direct review within the state court system."). This applies with equal force to guilty pleas. In fact, "[t]he interest in finality of guilty pleas . . . is of somewhat lesser weight when a direct appeal is involved." Fed. R. Crim. P. 11 advisory committee's note (1983).

The majority is right to say that "the reasonable probability standard is a demanding one" for a defendant wishing to upset the finality of a guilty plea. Maj. Op. at 7. But that standard does not leave us bereft of the ability to correct serious misfires in the plea bargaining process. Because this case arises on direct review, and because the particular circumstances surrounding the intervening *Rehaif* decision and the original Rule 11 error are enough in combination to establish a "reasonable probability" under *Dominguez Benitez*, I believe this is one of those unusual cases where vacating a defendant's plea is appropriate.

22

WYNN, Circuit Judge, concurring:

I concur fully in the majority opinion's thorough analysis of the district court's failure to properly advise Lockhart of the potential sentence he faced under the Armed Career Criminal Act. I also join the majority's conclusion that "the magistrate judge plainly erred in accepting Lockhart's guilty plea based on [a] pre-*Rehaif* understanding of the law." Maj. Op. at 15 (referring to *Rehaif v. United States*, 139 S. Ct. 2191 (2019)). However, the majority does not—but should—take this opportunity to answer a central question that *Rehaif* left unaddressed: What standard should courts use to decide whether to vacate a conviction tainted by *Rehaif* error?

As the majority notes, at the third step of the *Olano* inquiry, a defendant must show that the error affected his substantial rights. Maj. Op. at 5-6 (citing *United States v. Olano*, 507 U.S. 725, 732 (1993)). "[I]n most cases," for an error to have affected substantial rights under Federal Rule of Criminal Procedure 52(a) or (b), it "must have been prejudicial: It must have affected the outcome of the district court proceedings." *Olano*, 507 U.S. at 734. However, there is "a limited class of fundamental constitutional errors that . . . are so intrinsically harmful as to require automatic reversal . . . without regard to their effect on the outcome." *Neder v. United States*, 527 U.S. 1, 7 (1999) (citing Fed. R. Crim. P. 52(a)). Under Rule 52(b) plain-error review, this Court has held that such "structural errors" "necessarily affect substantial rights, satisfying *Olano*'s third prong." *United States v. Ramirez-Castillo*, 748 F.3d 205, 215 (4th Cir. 2014) (citing *United States v. David*, 83 F.3d 638, 647 (4th Cir. 1996)). This Court has not yet determined whether a *Rehaif* error is a structural error.

23

The majority explicitly avoids this question by finding sufficient prejudice in the *Rehaif* error combined with the erroneous sentencing information Lockhart received during the Rule 11 colloquy. In effect, the majority opinion adds very little to the jurisprudence interpreting *Rehaif* because Lockhart was prejudiced by the Rule 11 error standing alone. The opinion should go further and evaluate whether, and on what basis, the *Rehaif* error provides an alternative justification for vacating Lockhart's guilty plea and conviction.

Courts will need to decide what defendants must show in order to obtain relief under *Rehaif*—that is, if defendants who can demonstrate *Rehaif* errors on plain-error review can automatically satisfy the third prong of *Olano*, or if such defendants must show prejudice arising from the error. Rather than leave this important issue to a future panel, in my view, this *en banc* Court should confront it. The question is squarely presented in this case. The Court should not save for another day what it can do now. Instead, the Court should take this opportunity to provide clarity for parties facing uncertainty after *Rehaif*.

24

RUSHING, Circuit Judge, with whom Judges NIEMEYER, AGEE, and QUATTLEBAUM join, dissenting:

I respectfully dissent. This Court's authority to vacate a guilty plea and conviction is strictly circumscribed where, as here, the defendant did not move to withdraw his guilty plea in the district court or attempt to bring the errors complained of on appeal to the district court's attention in any fashion. The limits on our authority are not discretionary—they are imposed by the Federal Rules of Criminal Procedure, Supreme Court decisions, and precedent from this Court. In my view, faithful application of those limits requires affirmance. Lockhart has not satisfied his burden to show that the Rule 11 error or the *Rehaif* error, separately or combined, affected his substantial rights.

## I.

If a defendant believes that an error has occurred to his detriment in a federal criminal proceeding, "he must object in order to preserve the issue." *Puckett v. United States*, 556 U.S. 129, 134 (2009); *see* Fed. R. Crim. P. 51(b). "If he fails to do so in a timely manner, his claim for relief from the error is forfeited." *Puckett*, 556 U.S. at 134; *see United States v. Olano*, 507 U.S. 725, 731 (1993); *Yakus v. United States*, 321 U.S. 414, 444 (1944). "If an error is not properly preserved, appellate-court authority to remedy the error . . . is strictly circumscribed." *Puckett*, 556 U.S. at 134.

Rule 52(b) of the Federal Rules of Criminal Procedure creates "a limited exception" to the appellate preclusion that follows a defendant's forfeiture of an error in the district court. *Puckett*, 556 U.S. at 135. Under Rule 52(b), "[a] plain error that affects substantial rights may be considered even though it was not brought to the court's attention." The

25

Supreme Court has instructed that so-called "plain-error review" has four requirements:

(1) an error; (2) that is clear; (3) that affected the defendant's "substantial rights," which

ordinarily requires that the error "'affected the outcome'" of the proceedings; and (4) that

"'seriously affect[s] the fairness, integrity[,] or public reputation of judicial proceedings.'"

*Puckett*, 556 U.S. at 135 (first alteration in original) (quoting *Olano*, 507 U.S. at 734, 736).

If the first three requirements are not satisfied, a court of appeals "ha[s] no authority to

correct" the error. *Olano*, 507 U.S. at 741. Even if those requirements are satisfied, the

court may remedy the error at its discretion only if the fourth requirement is also satisfied.

*Puckett*, 556 U.S. at 135; *Olano*, 507 U.S. at 732. The defendant bears the burden of

establishing entitlement to relief at every step of the analysis. *United States v. Dominguez

Benitez*, 542 U.S. 74, 82 (2004); *see United States v. Vonn*, 535 U.S. 55, 59 (2002).

      To establish the prejudice required at the third step of this analysis, "a defendant

who seeks reversal of his conviction after a guilty plea, on the ground that the district court

committed plain error [in accepting his plea] under Rule 11, must show a reasonable

probability that, but for the error, he would not have entered the plea." *Dominguez Benitez*,

542 U.S. at 83. Relief on appeal from a guilty plea is "difficult to get" under this standard,

"as it should be." *Id.* at 83 n.9. By design, this standard "demand[s] strenuous exertion to

get relief for unpreserved error," in order to "encourage timely objections," "reduce

wasteful reversals," and accord proper respect to "the finality of guilty pleas," which are

"indispensable" to "the modern criminal justice system" and "usually rest, after all, on a

defendant's profession of guilt in open court." *Id.* at 82–83. An appellate court must

consider "the entire record," not merely the plea hearing, in assessing whether the

<div align="center">26</div>

defendant has carried his burden to show that it is reasonably probable he would not have pleaded guilty absent the error. *Id.* at 83; *see Vonn*, 535 U.S. at 59.

## II.

Lockhart pleaded guilty to possession of a firearm by a felon, in violation of 18 U.S.C. § 922(g)(1), and was sentenced to the mandatory minimum term of imprisonment applicable to his crime in light of his history as an armed career criminal. *See* 18 U.S.C. § 924(e). On appeal, Lockhart identifies two errors in the district court proceedings that he did not raise below. First, during the plea colloquy, the magistrate judge did not advise Lockhart of the increased sentence he could face because of his potential eligibility under the Armed Career Criminal Act (ACCA). I agree with the majority that this was a clear error under Rule 11(b)(1)(H) and (I). *See United States v. Hairston*, 522 F.3d 336, 340–341 (4th Cir. 2008) (holding that, although a district court "could not [be] certain" about whether ACCA would apply at the time of a Rule 11 proceeding, the court nevertheless must "anticipate the possibility" and inform the defendant ACCA "could" potentially apply). Second, no one informed Lockhart that the crime to which he pleaded guilty required the Government to prove, or Lockhart to admit, that he knew, when he possessed the firearm, that he had previously been convicted of a crime punishable by imprisonment for more than one year. I agree with the majority that, in light of the Supreme Court's recent decision in *Rehaif v. United States*, 139 S. Ct. 2191 (2019), this was also an error that was clear by the time of our en banc deliberation in this case. I part ways with the majority at the third step of the analysis—the prejudice inquiry. Lockhart has not shown a reasonable probability that, but for these errors, he would not have entered his plea.

27

A.

Beginning with the Rule 11 error, the Court must consider the entire record to determine whether Lockhart has shown a reasonable probability that, but for the magistrate judge's failure to correct the Government's misstatement of Lockhart's sentencing exposure during the plea colloquy, he would not have pleaded guilty. *See Dominguez Benitez*, 542 U.S. at 83. The Court is not at liberty to "upset a plea solely because of *post hoc* assertions from a defendant about how he would have pleaded" absent the error; rather, the Court must "look to contemporaneous evidence to substantiate a defendant's expressed preferences." *Lee v. United States*, 137 S. Ct. 1958, 1967 (2017). As the Supreme Court has instructed, the Court should consider evidence that Lockhart was correctly informed elsewhere about his sentencing exposure. *See Vonn*, 535 U.S. at 75 (considering evidence that the defendant was informed of his right to trial counsel before the plea proceeding); *Dominguez Benitez*, 542 U.S. at 84–85 (requiring consideration of "other facts that may have borne on [the defendant's] choice regardless of any Rule 11 error").

During his arraignment proceeding—before he entered a plea—Lockhart was correctly advised that "the ordinary maximum punishment is up to 10 years['] imprisonment" but that, "if [he had] three previous convictions for a violent felony or serious drug offense, the minimum term would be 15 years and the maximum sentence [would be] life imprisonment." J.A. 13. The Government specifically advised that, "[w]hile his criminal history [had not] been computed," the Government "[thought] that [the enhanced penalty] might indeed apply here." J.A. 13. In response, Lockhart's counsel previewed that he "would argue that it's 10 years." J.A. 15.

28

The presentence report—prepared after Lockhart pleaded guilty—correctly advised Lockhart that, under ACCA, he was subject to a mandatory minimum of 15 years in prison and a maximum of life.  J.A. 80–82, 86.  The presentence report specifically noted that, during the plea hearing, Lockhart had been misinformed that his maximum sentencing exposure was 10 years in prison when in fact his mandatory minimum sentence was 15 years.  J.A. 87.  Lockhart received the presentence report and filed objections, including objecting to the application of ACCA on the grounds that he was a juvenile at the time of the predicate offenses and that the offenses were part of one continuous string of robberies.  J.A. 63–64.  But Lockhart never objected to the application of ACCA on the ground that he had been misinformed about his sentencing exposure at the time he pleaded guilty.  Nor did Lockhart attempt to withdraw his guilty plea after the presentence report correctly informed him of his sentencing range, despite his right to withdraw his plea before sentencing for "a fair and just reason."  Fed. R. Crim. P. 11(d)(2)(B).

At sentencing, Lockhart was again correctly informed about the mandatory minimum sentence and expressed no surprise or confusion.  To the contrary, he confirmed that he had read the presentence report, reviewed it with his attorney, and understood it.  The district court sentenced Lockhart to the mandatory minimum of 15 years in prison pursuant to ACCA.  After the court pronounced the sentence, Lockhart's counsel asked to confer with the Government's attorney.  After he did so, Lockhart's counsel stated:  "I'm going back to his plea colloquy.  He didn't plead to [ACCA;] it was not on the Bill of Indictment.  But I went over it beforehand.  So I just want to put it on the record that he was fully aware of that.  I just thought about it."  J.A. 51–52.  That statement is consistent

29

with the record, and no one has questioned counsel's credibility. *But see* Maj. Op., *supra*, at 13 ("We have no way of evaluating the credibility of defense counsel's statement."). Lockhart did not dispute the accuracy of his attorney's representation at sentencing, nor has he disputed it on appeal.[1]  The arraignment, the presentence report, defense counsel's statement, and the absence of any adverse response from Lockhart are powerful indicators that Lockhart would have persisted in his guilty plea even if he had been given correct information about his potential sentencing exposure during the plea hearing.

The Court should also consider "the overall strength of the Government's case and any possible defenses that appear from the record," as the Supreme Court has instructed. *Dominguez Benitez*, 542 U.S. at 85.  Police found Lockhart sitting in the front seat of a car with a loaded pistol beside him and an extra magazine in the pocket of the driver's side door.  Lockhart told the officers he was trying to push the gun under the seat when they arrived.  Lockhart had been convicted of multiple felonies punishable by one year or more in prison at the time he possessed the gun and, as will be discussed, *see infra* II.B., the evidence indicates that Lockhart knew he was a felon at the time.  In light of these facts, one could fairly ask what Lockhart "could gain by going to trial." *Dominguez Benitez*, 542 U.S. 85.  In contrast, by pleading guilty, Lockhart shaved eight months off the bottom of his Guideline sentencing range, moving the range as low as possible in light of the statutory

---

[1] Judge Wilkinson notes that Lockhart requested a new attorney on appeal.  Conc. Op., *supra*, at 21.  We do not know the reason for this request, which could have related to any number of grievances, including "buyer's remorse."  Conc. Op., *supra*, at 17. Importantly, Lockhart does not claim that he requested new counsel because his prior counsel misspoke when he told the court Lockhart was "fully aware" of the ACCA enhancement.

30

mandatory minimum. *Cf. Rosales-Mireles v. United States*, 138 S. Ct. 1897, 1907 (2018) ("Any amount of actual jail time is significant . . . ." (internal quotation marks and alteration omitted)).

The majority correctly observes that that the most closely analogous precedent is our decision in *United States v. Massenburg*, 564 F.3d 337 (4th Cir. 2009). Maj. Op., *supra*, at 8. Massenburg was also misinformed at his plea hearing that he faced a ten-year maximum prison sentence for pleading guilty to being a felon in possession of a firearm when, in fact, ACCA applied and subjected him to a 15-year mandatory minimum. As here, the presentence report included the correct ACCA calculation. The district court sentenced Massenburg to 210 months in prison. On appeal, we concluded that Massenburg had failed to demonstrate prejudice under plain-error review. As the majority correctly summarizes, we emphasized several facts, each of which applies equally here: "(1) Massenburg had not made any statements on the record suggesting that he would not have pleaded guilty if the district court had properly informed him of the sentencing exposure that he faced; (2) Massenburg had not moved to withdraw his guilty plea after learning from the [presentence report] that he could be sentenced under the ACCA; and (3) the parties did not dispute that the evidence of Massenberg's guilt was strong." Maj. Op., *supra*, at 8 (internal quotations marks and alterations omitted). This Court's decision in *Massenburg* compels the conclusion that Lockhart also has not carried his burden to demonstrate prejudice.

Indeed, Lockhart's case for prejudice is even weaker than Massenberg's. In addition to the shared facts listed above, Lockhart was correctly informed at his

31

arraignment—before pleading guilty—that ACCA's increased sentencing range could apply to him. And Lockhart's attorney—who attended the arraignment—later represented to the district court in Lockhart's presence that counsel "went over [ACCA] beforehand" with Lockhart and Lockhart "was fully aware" that ACCA's enhanced penalty may apply. J.A. 51–52. In light of *Massenburg*, Lockhart surely has failed to show "a reasonable probability that, but for the error [at his plea hearing], he would not have entered the plea." *Dominguez Benitez*, 542 U.S. at 83.

The majority attempts to distinguish *Massenburg* and finds prejudice from the Rule 11 error based on the fact that "ACCA substantially increased Lockhart's sentencing exposure" and "severely restricted any benefit Lockhart could have received by pleading guilty." Maj. Op., *supra*, at 10–11. Of course, ACCA "substantially increased" Massenburg's sentencing exposure too, and it typically will—that is its purpose. *Compare* 18 U.S.C. § 924(a)(2) *with* 18 U.S.C. § 924(e)(1). And a defendant's "assessment of his strategic position" certainly is relevant to discerning whether he would have pleaded guilty absent the Rule 11 error. *Dominguez Benitez*, 542 U.S. at 85. But in my view, these strategic considerations cannot carry Lockhart's burden in light of the evidence that he was repeatedly correctly informed of his sentencing exposure and yet, despite knowing his strategic position full well, never objected to the Rule 11 error, never moved to withdraw his guilty plea, and never indicated that he would not have pleaded guilty absent the error

32

in his plea hearing.[2]  To rely on abstract strategic considerations alone and turn a blind eye to countervailing facts in the record about Lockhart's actual decisions in the district court borders on presuming prejudice, and it gives short shrift to the Supreme Court's instruction that the reviewing court's judgment should be "informed by the entire record." *Dominguez Benitez*, 542 U.S. at 83.  As we recognized in *Massenburg*, "[d]efendants plead guilty for various reasons, many of which are wholly unrelated to the length of a potential sentence." 564 F.3d at 344.  Lockhart has not told us why he pleaded guilty, and he is not required to. But neither has he given us reason to believe that, but for the magistrate judge's error in the plea hearing, he would not have entered his plea.

## B.

Moving to the *Rehaif* error, I cannot conclude that Lockhart has shown that this error "'affected the outcome of the district court proceedings.'" *Puckett*, 556 U.S. at 135 (quoting *Olano*, 507 U.S. at 734).  I assume, as the majority does, that the *Rehaif* error is subject to plain-error review.  *See* Maj. Op., *supra*, at 15.  Indeed, "while *Rehaif*'s impact is only beginning to be addressed, courts have thus far unanimously applied a plain error standard in addressing convictions obtained before that decision." *United States v. Balde*,

---

[2] The majority cites *United States v. Hairston*, 522 F.3d 336 (4th Cir. 2008), in which the district court also failed to correctly inform the defendant of his sentencing exposure under ACCA.  Application of the ACCA enhancement in that case "seemed to take the parties by surprise." *Id.* at 339.  The defendant moved to withdraw his guilty plea, explaining to the district court that he would not have pleaded guilty had he been aware of his ACCA exposure because "[his] kids would never see [him] again." *Id.*  There was "nothing in the record to show that [the defendant] otherwise had knowledge" of the ACCA enhancement. *Id.* at 341–342.  Because the defendant preserved his objection in the district court, plain-error review did not apply, and the Government bore the burden on appeal to demonstrate that the error was harmless.

33

943 F.3d 73, 92 (2d Cir. 2019). Despite purporting to apply plain-error review, however, the majority does not identify any additional prejudice it believes Lockhart suffered from the *Rehaif* error. *See* Maj. Op., *supra*, at 15. I would hold that Lockhart has not carried his burden.

The Court must again evaluate the error against the entire record. *See Dominguez Benitez*, 542 U.S. at 83; *Vonn*, 535 U.S. at 59. Lockhart admitted in the factual basis for his plea that he had been convicted of an offense punishable by more than one year in prison and that his firearm rights had not been restored. J.A. 21. The record shows that in 2006, Lockhart pleaded guilty in state court to six counts of robbery with a dangerous weapon and four counts of conspiracy to commit robbery with a dangerous weapon. J.A. 72–73; S.J.A. 1–5. The "transcript of plea" from the state court indicates that each of these offenses is a felony and the "maximum punishment" for each is more than one year of imprisonment. S.J.A. 5. Lockhart received two consecutive sentences of between 38 and 55 months in prison for these convictions, which were consolidated into two judgments. Lockhart spent over six years in prison for these offenses. Roughly three years after his release, Lockhart was arrested on the instant felon-in-possession charge. When the officers arrested Lockhart, he told them that he was trying to push the gun under the seat of the car, apparently to hide it. J.A. 21. And at his sentencing, Lockhart admitted that he "possess[ed] a firearm when [he] knew [he] was a felon," explaining that he kept the gun because he felt "like [his] family's life was in danger." J.A. 47.

This evidence that Lockhart knew he had been convicted of a crime punishable by imprisonment exceeding one year when he possessed the firearm, *see* 18 U.S.C.

34

§ 922(g)(1), strongly suggests that he would have persisted in his guilty plea even if he had been correctly instructed in accord with *Rehaif*. Lockhart argues that, if he had known of this element, he could have decided to put the Government to its proof at trial. But the preceding review of the record "reveals no reason to think that the government would have had any difficulty at all in offering overwhelming proof that [Lockhart] knew that he had previously been convicted of offenses punishable by more than a year in prison." *United States v. Burghardt*, 939 F.3d 397, 404 (1st Cir. 2019); *see Rehaif*, 139 S. Ct. at 2198 (noting that a defendant's knowledge of his status can be inferred from circumstantial evidence). Like our sister circuits have held in similar cases concerning *Rehaif* errors in convictions under 18 U.S.C. § 922(g)(1), I would hold that Lockhart has failed to prove the prejudice required to vacate his guilty plea on plain-error review. *See Burghardt*, 939 F.3d at 405–406 (rejecting challenge to *Rehaif* error in guilty plea on plain-error review in light of the whole record); *United States v. Williams*, 776 Fed. App. 387, 388 (8th Cir. 2019) (per curiam) (same); *United States v. Benamor*, 937 F.3d 1182, 1189 (9th Cir. 2019) (rejecting challenge to *Rehaif* error in jury trial on plain-error review in light of the whole record); *United States v. Hollingshed*, 940 F.3d 410, 415–416 (8th Cir. 2019) (same); *United States v. Reed*, 941 F.3d 1018, 1021 (11th Cir. 2019) (same); *United States v. Mancillas*, No. 19-1151, 2020 WL 88794, at *1–2 (7th Cir. Jan. 7, 2020) (same); *United States v. Johnson*, 781 Fed. App. 370, 371 (5th Cir. 2019) (per curiam) (rejecting challenge to *Rehaif* error in factual basis for guilty plea on plain-error review in light of the whole record); *United States v. Denson*, 774 Fed. App. 184, 185 (5th Cir. 2019) (per curiam)

35

(same); *United States v. Fisher*, No. 18-3234, 2019 WL 6522869, at *5 (10th Cir. Dec. 4. 2019) (same).

<div align="center">C.</div>

Having concluded that Lockhart has failed to show a reasonable probability that he would not have pleaded guilty but for the Rule 11 error or the *Rehaif* error, I also do not find his case for prejudice to be strengthened by combining those errors. "Errors are commonplace, . . . and our affection for procedural perfection cannot operate to the detriment of our commitment to other, equally important, principles of adjudication." *Massenburg*, 564 F.3d at 345. Those principles include the limits on our power as a reviewing court to remedy unpreserved errors. Because Lockhart has not shown that the errors in this case affected the outcome of the proceedings, this Court "ha[s] no authority to correct [them]." *Olano*, 507 U.S. at 741. I would affirm.

<div align="center">36</div>